State *vs.* George W. McVay, John A. Grant, George J. Kelley.

State *vs.* Same.

State *vs.* Same.

MARCH 3, 1926.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1) Criminal Law. Accessory Before Fact. Involuntary Manslaughter.*

Indictment charged captain and engineer of vessel with manslaughter, as a result of criminal negligence connected with the operation of the ship's boiler, with the result that an explosion occurred killing a passenger, and charged defendant as an accessory before the fact:—

*Held,* that premeditation is not inconsistent with every charge of manslaughter, and a defendant may be indicted and convicted of being an accessory before the fact to the crime of manslaughter arising through criminal negligence.

*(2) Indictments. Malice.*

Malice in its legal sense, which is the state of mind manifested by an intent to commit an unlawful act against another, may exist without actual intention of any mischief if the killing is the actual consequence of careless action.

*(3) Criminal Law. Manslaughter. Malice.*

Malice in the sense of general criminal intent exists in manslaughter, and the term "maliciously" used in an indictment charging defendant as an accessory before the fact to crime of manslaughter, in having with knowledge of danger procured captain and engineer of vessel to develop steam in a boiler known to be unsafe with the result that it exploded, killing a passenger means that he is charged with acting with an unlawful intent

by reason of directing the principals to act with utter disregard of consequences to human life.

*(4)   Involuntary Manslaughter.*

"Involuntary" as applied to manslaughter, characterizes the result of the act, not the doing of the act, and may cover cases of volitionally doing a lawful act wantonly or in a grossly careless manner.   Hence an indictment for involuntary manslaughter may properly charge certain defendants, while exercising no conscious volition to take life, with negligence of such a character that criminal intention can be presumed and it may also charge a defendant as an accessory before the fact in intentionally directing and counselling the grossly negligent act.

INDICTMENTS charging manslaughter.   Certified on question of doubt under Gen. Laws, 1923, cap. 348, sec. 5.

BARROWS, J.   Heard on a certification of a question of law before trial.

Three indictments for manslaughter, each containing four counts, were brought against the captain and engineer of the Steamer Mackinac as principals and against Kelley as accessory before the fact.   The steamer carried several hundred passengers from Pawtucket to Newport via Narragansett Bay.   The boiler producing the steam by which the vessel was propelled, burst near Newport and many lives were lost.   The present indictments are for causing the deaths of three persons killed by escaping steam after the explosion of the boiler.

Demurrers, on grounds that the indictments improperly combined a charge of assault and negligence and that there was an improper joining of principal and accessory before the fact, were overruled.   Two additional grounds of demurrer set up by defendant Kelley were not decided but were deemed of such doubt and importance that the question raised by them was certified to this court for determination, under General Laws, 1923, Chapter 348, Section 5.

We are not now concerned with the correctness of the lower court's rulings on the demurrers.   Exceptions to those rulings have been taken and the defendants' rights reserved.   Our present question relates solely to Kelley's grounds of demurrer which were not acted upon.   The

same question is raised upon each indictment. That question is: "May a defendant be indicted and convicted of being an accessory before the fact to the crime of manslaughter arising through criminal negligence as set forth in the indictment?"

That the indictment charges manslaughter against the captain and engineer as a result of criminal negligence connected with the operation of the ship's boiler for present purposes is not disputed. Neither is there dispute as to the meaning of accessory before the fact. He is "one who, being absent at the time the crime is committed, yet procures, counsels or commands another to commit it". 1 Bouvier Law Dict. (Rawle) 100; 1 Archbold Cr. Prac. & Proc. p. 65. In the first count the negligence charged is the "wanton and willful" creation of *any* steam in a boiler known to be worn, corroded, defective and unsafe, as a result whereof an explosion occurred killing a passenger; the charge against Kelley as accessory is that "before said felony and manslaughter was committed," . . . he did at Pawtucket "feloniously and maliciously aid, assist, abet, counsel, hire, command and procure the said George W. McVay, and John A. Grant, the said felony and manslaughter in manner and form aforesaid to do and commit". The latter is substantially the language applied to Kelley as accessory in the other three counts. The second count of the indictment charges knowledge of the strength and capacity of the boiler on the part of the principals and negligence in developing more steam than the boiler could safely hold. The third count charges a lack of reasonable care in generating steam in a boiler known to be so worn, etc., as to be unsafe and the fourth count charges that defendants having control of generating steam and knowing the boiler to be defective so disregarded their duty that the explosion followed.

The State, substantially adopting the definition of manslaughter as given in Wharton on Homicide, 3rd ed. p. 5, defines it as "The unlawful killing of another without malice

either express or implied". The State further refers to the charge in the indictment as "involuntary manslaughter, that is, the killing of another without malice and unintentionally in negligently doing an act lawful in itself and in the negligent omission to perform a legal duty". Because the manslaughter charge is "without malice" and "involuntary" Kelley contends that he can not be indicted legally as an accessory before the fact. The argument is that manslaughter being a sudden and unpremeditated crime inadvertent and unintentional by its very nature can not be "maliciously" incited before the crime is committed. Such is the view expressed by textwriters, decision or dicta in 1 Hale, P. C. 437, 615, 616; Hawkins, P. C. Chap. 30, § 2, manslaughter; *Goff* v. *Byby*, 2 Cro. Eliz. 540; *Bibithe's Case*, 4 Coke Rep. 43 b; Archbold, Crim. Prac. & Proc. 8th ed. Vol. 1, pp. 65, 66; 4 Blackstone commentaries, 36 and 191; *State* v. *Kinchen*, 126 La. p. 39 (1910); *Adams* v. *State*, 65 Ind. 565; Wharton on Homicide, § 59, pp. 75, 76; 13 R. C. L., § 25, p. 726; *State* v. *Kennedy*, 95 S. E. (S. C.) 350 (1918); *State* v. *Robinson*, 12 Wash. 349 (1895); *Bowman* v. *State*, 20 S. W. 558, (Tex.) (1892). In most of these citations a charge of murder was under consideration and the theory was that, after a conviction for manslaughter was had, there could be no accessory before the fact. Some of these authorities state broadly that there can be no accessory before the fact in manslaughter giving the reasons now urged by Kelley.

While everyone must agree that there can be no accessory before the fact when a killing results from a sudden and unpremeditated blow, we do not think it can be broadly stated that premeditation is inconsistent with every charge of manslaughter. Manslaughter may consist, among other things, of doing an unlawful act resulting in unintentional killing, such as violation of motor vehicle laws or administration of drugs to procure an abortion. 29 C. J. § 136, p. 1149. Manslaughter is likewise committed if an unintentional killing is occasioned by gross negligence in the

doing of an act lawful in itself. 29 C. J. § 141, p. 1154. There is no inherent reason why, prior to the commission of such a crime, one may not aid, abet, counsel, command or procure the doing of the unlawful act or of the lawful act in a negligent manner. A premeditated act may be involved in such unlawful homicides. 1 R. C. L. § 24, p. 146. 29 Corpus Juris, § 38, p. 1067, says: "At common law there may be accessories before the fact to involuntary manslaughter." Cases considering the question before us are *Queen* v. *Smith & Taylor*, 2 Cox. Cr. Cas. 233 (1847) quaere; *Reg.* v. *Gaylor*, 7 Cox Cr. Cas. 253 (1857); Russell on Crimes, 7th Eng. & 1st Canadian ed. 119, 779, 780; *Rex* v. *Russell*, 1 Moody Cr. Cas. 356; *Mathis* v. *State*, 45 Fla. 46, at 69; *Commonwealth* v. *Adams*, 127 Mass. 15 (1879); *State* v. *Coleman*, 5 Porter, 32 (Ala.) (1837); *State* v. *Hermann*, 117 Mo. 629; *Stipp* v. *State*, 11 Ind. 62 (1858) quaere; *Rex* v. *Brooks*, 9 Br. Col. 13; 1 Bishop on Cr. L. 8th ed. Vol. I, § 678, pp. 412, 413. The latter states: "Manslaughter does not commonly admit of an accessory before the fact, because when the killing is of previous malice, it is murder. This is the ordinary doctrine yet probably there may be a manslaughter wherein this is not so, as, if one should order a servant to do a thing endangering life yet not so directly as to make a death from the doing murder, it might be manslaughter—then, why should not the master be an accessory before the fact in the homicide?"

Decisions in the above cases pro and con are sometimes confusing because of failure to keep clear the difference in popular and legal meaning of the words "malice" and "involuntary". In a popular sense "malice" means hatred, ill will or hostility to another; in law it means "the state of mind manifested by an intent to commit an unlawful act against another". Webster's New Int. Dict. In *Commonwealth* v. *York*, 9 Met. 93, at 104, SHAW, C. J., defines "malice" as "the willful doing of an injurious act without lawful excuse". See also Words & Phrases. It may be found in an act shown by the circumstances to wickedly or

willfully disregard the rights or safety of others. *Common-wealth* v. *Webster*, 5 Cush. 295; *People* v. *Davis*, 8 Utah, 412. Malice in its legal sense may exist without actual intention of any mischief if the killing is the actual consequence of careless action. *Penn.* v. *Bell*, Pa., Addison 156, s. c.1 Am. Dec. 298 at 301. Hence, reference to manslaughter as being "without malice" needs close scrutiny. The use of the term "without malice" in the State's definition of manslaughter, *supra*, is, as often in the textwriter's, for the purpose of distinguishing manslaughter from murder, *State* v. *Fenik*, 45 R. I. 309, at 314,—rather than to give an all inclusive definition of manslaughter. Malice in the sense of general criminal intent exists in manslaughter, and Wharton says the distinction between express and implied malice is unsound. "There is no case of homicide in which the malice is not implied; none in which it is not inferred from the circumstances of the case." Wharton on Homicide, § 84, p. 104; *United States* v. *King*, 34 Fed. 302. When, therefore, "maliciously" is used in this indictment as against Kelley, it means that he is charged with acting with an unlawful intent by reason of directing the principals to act with utter disregard of consequences to human life. *Commonwealth* v. *Adams*, 127 Mass. 15; *Commonwealth* v. *Webster*, 5 Cush. 295.

"Involuntary" in common parlance means not in accordance with the actor's will or choice. Webster's New Int. Dict. As applied to charges of manslaughter it may cover cases of volitionally doing a lawful act wantonly or in a grossly careless manner. "Involuntary" used in connection with manslaughter, characterizes the result of the act, not the doing of the act. It does not mean that volition was not present in the negligent act from which the death resulted. Voluntary manslaughter is often described as *per infortunium*—an unlawful taking of human life under circumstances falling short of willful or deliberate intent to kill and yet approaching too near thereto to be justifiable homicide. The law does not permit defendant in such a

case to say that he did not intend the consequences of his act. See classification of voluntary and involuntary manslaughter in 29 C. J. 1047.

By keeping these distinctions in mind, the present indictment for involuntary manslaughter is not self contradictory when it charges Kelley to be an accessory before the fact. It was possible for him at Pawtucket to intentionally direct and counsel the grossly negligent act which the indictment charges resulted in the crime. Involuntary manslaughter, as set forth in this indictment means that defendants exercised no conscious volition to take life but their negligence was of such a character that criminal intention can be presumed. 29 C. J. 1154. The crime was consummated when the explosion occurred. The volition of the principals was exercised when they chose negligently to create steam which the boiler could not carry. The doing of the act charged or failure to perform the duty charged was voluntary and intentional in the sense that defendants exercised a choice among courses of conduct. It is obvious that Kelley could participate and is charged with participating in procuring defendants to act in a grossly negligent manner prior to the explosion. Legal precedents based upon facts unlike the present ones do not convince us that he could not have been an accessory before the fact.

We have been referred to no case of an accessory before the fact on an indictment charging negligent manslaughter. The absence of such cases may be due to the fact that, by statute, in many jurisdictions accessories before the fact are treated as principals. Our statute relates only to their punishment and not to the nature of the offence. Gen. Laws 1923, Chap. 402, Sec. 2 (6251). The case of United States v. Van Schaick, 134 Fed. 592, treated all defendants as principals, holding the directors of a steamboat company negligent in failing to provide life preservers as a result of which many passengers were drowned. The negligence was held to be a continuing cause actually operating to produce

the deaths though the directors personally were not present at the moment of death.  The negligence charged against Kelley is not of this type.

We are convinced that in some types of manslaughter there may be an accessory before the fact and from our study of the present indictments we believe they aver such cases. Specific duties are stated to have been laid upon the captain and engineer.  Defendant is charged with full knowledge of those duties and of the fact that.the boiler was unsafe. He is charged with counselling and procuring the principals at Pawtucket to disregard their duties and negligently create steam.  Until the explosion no crime was committed. Defendant was not present when the negligence resulted in a criminal act.  The advice at Pawtucket was not continuing negligence on Kelley's part.  The facts set forth in these indictments, if existent, are such that a jury might find that defendant Kelley, with full knowledge of the possible danger to human life, recklessly and willfully advised, counselled and commanded the captain and engineer to take a chance by negligent action or failure to act.

We therefore answer the question certified on each indictment in the affirmative.  The papers in each case, with this decision certified thereon, are sent back to the Superior Court for further proceedings.

*Charles P. Sisson, Attorney General, Oscar L. Heltzen, Asst. Attorney General,* for State.

*Fitzgerald & Higgins, William H. Camfield,* for defendant, George J. Kelley.