TERRELL, Acting Chief Justice.
Appellant was informed against in two counts, the first charging murder in the third degree and the second charging manslaughter. At the trial he entered a plea of not guilty and waived a jury. The State then announced nolle pros as to count two of the information and the trial proceeded on count one. The court found and adjudicated defendant guilty of murder in the third degree and sentenced him to three years at hard labor in the state penitentiary. This appeal was prosecuted.
Two questions are presented for determination, (1) may an unlawful death, resulting from an attempt to procure a miscarriage, constitute murder in the third degree, (2) were the dying declaration and the testimony supporting it properly admitted in evidence ?
Relying on Weightnovel v. State, 46 Fla. 1, 35 So. 856, defendant moved to quash the first count of the information. His motion was overruled. In the Weightnovel case the court was confronted with Section 782.04, Florida Statutes 1951, F.S.A., the pertinent part of which provides that when murder is “perpetrated without any design to effect death, by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary, it shall be murder in the third degree, and shall be *921 punished by imprisonment in the state prison not exceeding twenty years.”
Construing this statute in connection with Section 797.01, Florida Statutes 1951, F.S. A., the Court held that a murder perpetrated while engaged in an attempt to procure a miscarriage, would not constitute murder in the third degree or any other degree of homicide, because it would amount to convicting the legislature of the gross inconsistency of creating the crime of murder out of the intentional killing of a woman, not pregnant with a quick child, in an attempt to procure a miscarriage, the reason being that Section 782.10, Florida Statutes 1951, F.S.A., makes it manslaughter only to cause the death of a woman pregnant with a quick child, where the intent was to abort or destroy the child.
The State counters this holding with the information that since the Weight-novel decision in 1903, the legislature has repeatedly re-enacted the statute defining murder in the third degree and has at no time seen fit to engraft on it the doctrine of the Weightnovel case. The statute is no different from what it .was when the Weightnovel case was decided and it is reasonable to hold that murder in the third degree may stem from death resulting from the felony of attempting to induce a woman to abort. The legislature must have so intended since it has not attempted to change the law. It is accordingly our view that no error was committed in overruling the motion to quash. We are also of the view that the record in this case requires reversal without reference to or support of the Weightnovel case.
We think the trial court committed error in refusing to strike the dying declaration of the victim of the homicide. True, there is some contradictory evidence on the point but the court in admitting the dying declaration found, in effect, that without it there would be “reasonable doubt” of the sufficiency of the evidence to convict. Taken with other evidence he said he was not in doubt. Our view is that when the positive and negative evidence is balanced in the light of all reasonable probabilities, it is not strong enough to support the conviction.
To point this thesis the pertinent part of the testimony of Elsie Moncrief is as follows :
“Q. Please tell us what conversation you had, as you recall, when you went into the room where Mrs. Raw-son was. A. Well, she asked me if I knew what was wrong with her and I said, ‘No’. When she smiled and said, T just want you to know I did it myself.’
“Q. What is that? A. She said, T just want you to know I did it myself.’
“Q. What did you ask her? A. I asked her if she had an explanation.
“Q. You asked her if she had an explanation? A. Yes, sir. And she said, T don’t know’.
“Q. Did you report that conversation to anyone? A. Yes, sir; to Dr. Cohn.”
This was the second dying declaration the’ deceased had uttered. The “doubt” that the trial judge had about the dying declaration would, if taken in isolation, require an acquittal. The evidence in support of the dying declaration was vague, uncertain and contradictory and was flatly contradicted by at least four witnesses. As a matter of law, it was not sufficient to establish guilt beyond a reasonable doubt because the decided preponderance of the legal evidence condemned the confession. The evidence of the victim was contradictory and that of the main witness for the State was far from convincing. For these reasons, we think the dying declaration should have been excluded and that the ends of justice require a new trial.
The judgment should be and is hereby reversed and a new trial awarded.
MATHEWS and DREW, JJ., and JONES, Associate Justice, concur.