91 So.2d 185 (1956)
Harold Douglas JOHNSON and Alton H. Johnson, Appellants,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
May 23, 1956.
Rehearing Denied January 3, 1957.
*186 Coe & Coe, Pensacola, for appellants.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen and Jos P. Manners, Asst. Attys. Gen., for appellee.
HOBSON, Justice.
This is an appeal from judgments entered by the Court of Record of Escambia County on verdicts finding appellant Harold Johnson guilty of third degree murder and appellant Alton Johnson guilty as accessory before the fact.
The basic facts are as follows: decedent, an 18 year old Alabama high school student, became pregnant, apparently by one William Hamilton, the school athletic coach, who admitted having had sexual intercourse with her on several occasions. Hamilton confided in his friend Alton Johnson, one of the appellants, and solicited Alton's aid in finding an abortionist. Alton consulted with his brother, appellant Harold Johnson, a traveling salesman, who thought he could make appropriate arrangements in Pensacola. Alton drove decedent to Pensacola and turned her over to Harold, who rented a cottage in a tourist court. Harold testified that he attempted to get in touch with an abortionist named Margaret, but was temporarily unsuccessful, that decedent asked him to leave the cottage, as he did for a short while, and that when he returned, decedent was demonstrating strange symptoms and later appeared to faint. Harold then contacted Alton, who had not been present while Harold and decedent were at the tourist court, and the pair took her to the hospital, where she was pronounced dead. An autopsy revealed that she had died from air bubbles in the bloodstream, admitted through perforations or puncture wounds in the placenta, apparently produced by the introduction of a sharp object through the cervix. A piece of wire, apparently part of a coat hanger, was later found at the tourist court in the cottage Harold and decedent had occupied.
The information filed against Harold and Alton was in two counts, the first count charging both with inserting a wire into the womb of decedent with intent to produce a miscarriage, thereby causing her to sicken and die, and the second count charging that Alton was guilty of "the substantive felony of accessory before the fact to the felony of manslaughter."
The jury found Harold guilty of third degree murder. Alton was found not guilty on the first count, but "guilty as charged" under the second. Thereupon the court adjudged Harold guilty of third degree murder and Alton guilty of "accessory before the fact to third degree murder under the second count."
Appellant Harold Johnson contends that under the decision of this court in Weightnovel v. State, 46 Fla. 1, 35 So. 856, his conviction of third degree murder cannot stand. The State counters with the argument that this point was not properly raised, but we do not agree. It was vigorously urged by the defense throughout the trial, beginning at the close of the State's case, and it was raised as an exception to the State's requested instructions in a manner specific enough so that it could not have been mistaken by the trial judge. Febre v. State, 158 Fla. 853, 30 So.2d 367, 368, relied upon by the State, is not in point, for in that case the record showed proposed instructions to the jury "`were submitted to counsel for both sides, and no exceptions were taken or recorded.'" That is not the situation here.
To proceed to the merits, the first count of the information herein was similar to the first count considered in the Weightnovel case, supra. In this case as in that, appellants were charged with attempting an abortion with an instrument, with fatal results, and there was neither allegation nor proof that the deceased was pregnant with a quick child. In the Weightnovel case, construing the applicable statutes, we said:

*187 "Murder in the third degree is defined by section 2380, Rev.St. [presently F.S. Sec. 782.04] as follows: `The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary, it shall be murder in the third degree, and shall be punished,' etc. But the acts charged in the said count of the information can hardly be classed as murder in the third degree, or in any of the other statutory degrees of murder, without convicting the legislature of the gross inconsistency of creating the crime of murder out of the unintentional killing of a woman, not pregnant with a quick child, in an attempt to procure a simple miscarriage of such woman, when by the provisions of section 2387, Rev.St. 1892 [presently F.S. Sec. 782.10], it is made manslaughter only to cause the death of a woman pregnant with a quick child where the intent was to abort or destroy such child. We are not justified in so construing the statutes as to bring about so absurdly inconsistent a result." 46 Fla. 7, 8, 35 So. 858.
The court went on to hold, however, that the first count of the indictment sufficiently alleged the crime of manslaughter under the general manslaughter statute, R.S. Sec. 2384, presently F.S. 782.07, F.S.A.
Under the construction given in the Weightnovel case to the statutes involved, it was plainly error to hold the appellant Harold Johnson guilty of third degree murder. There would be no further problem on this aspect of the case if it were not for certain dictum in Grimes v. State, Fla., 64 So.2d 920, to the effect that because the legislature has not amended the applicable law since the Weightnovel case was decided (in 1903), this amounts to a repudiation of the Weightnovel construction. Appellants challenge this statement in the Grimes case, and we agree that it must be, and it is hereby, receded from. In the civil case of White v. Johnson, Fla., 59 So.2d 532, we said, in accord with a fundamental principle of statutory construction, that failure by the legislature to amend a statute which had been construed in 1939 in the case of Wolf v. Commander, 137 Fla. 313, 188 So. 83, amounted to legislative acceptance or approval of the construction rendered in the earlier case. In the present case this principle is applicable a fortiori. In 14 Am.Jur., Courts, Sec. 67, p. 288, it is stated:
"Where a court is asked to extend the scope of a criminal statute beyond that given to it by a former construction, such a request may be denied on the ground that the overturning or extension of an established doctrine of the criminal law would be in the nature of ex post facto judicial legislation."
Moreover, contemporaneous construction and long acquiescence in a particular construction are entitled to great weight. The City of Panama v. Phelps, 101 U.S. 453, 25 L.Ed. 1061; Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64. The statutes we have cited above made their first appearance, so far as we are informed, as part of Chapter 1637, Laws of Florida 1868. While the Weightnovel construction, in 1903, was not contemporaneous with the adoption of the statutes, it was reached in an atmosphere far more nearly contemporaneous thereto than that existing when the Grimes case was decided, and is entitled to correspondingly more weight, in the absence of a cogent reason for change, and we are aware of no such reason. We therefore reaffirm the Weightnovel construction, and hold that the conviction of appellant Harold Johnson of third degree murder was error. We cannot accept the suggestion of counsel that manslaughter was not charged because there was no allegation that the act was negligently done. In the Weightnovel case we squarely held that the state of facts laid in this information constitutes manslaughter under F.S. Sec. 722.07, F.S.A., the general manslaughter statute. But since Harold Johnson received a verdict of guilty of a higher offense than that with which he was charged, and which was not responsive to the information, the judgment as to him must be reversed and the cause *188 remanded for a new trial. See Ziegler v. State, 95 Fla. 108, 116 So. 241, and Myers v. State, 115 Fla. 627, 155 So. 797.
Appellant Alton Johnson contends that it was error for the court to adjudge him guilty as accessory before the fact to third degree murder when the jury had found him guilty as accessory to manslaughter, and we must, of course, agree. At the early common law, there could be no accessory before the fact to manslaughter but this rule has now been generally departed from. See Thomas v. State, 73 Fla. 115, 74 So. 1; Mathis v. State, 45 Fla. 46, 34 So. 287; State v. McVay, 47 R.I. 292, 132 A. 436, 44 A.L.R. 572; Annotation, Accessory before fact in manslaughter, 44 A.L.R. 576; and Clark and Marshall on Crimes, 5th Ed. Sec. 175. And if the crime of murder had been committed herein, an accessory appropriately indicted could properly be found guilty as accessory to manslaughter, as a lesser included offense, Thomas v. State, supra, 74 So. 1. It is equally clear, however, that one cannot be charged with the lesser offense, found by the jury to be guilty thereof, and subsequently adjudged by the court to be guilty of the greater offense. The judgment as to Alton Johnson is therefore patently in error, and must be reversed.
In fairness to the trial judge, it might be observed that we understand how he could easily have been led into error by the dictum in Grimes v. State, supra, 64 So.2d 920. The errors of law, however, have been committed to the obvious prejudice of these appellants. Under such circumstances, we are of the view that by a new trial the evidence can be presented to another jury liberated from the harmful errors of law which occurred in the first trial. Despite the terrible tragedy reflected by this record, our system of justice will permit of no other conclusion, and a new trial must be awarded both appellants. See Ziegler v. State, supra, 116 So. 241; Myers v. State, supra, 155 So. 797, and Ellis v. State, 86 Fla. 155, 97 So. 285.
Reversed and remanded for further proceedings not inconsistent with this opinion.
THOMAS, THORNAL and SEBRING, JJ., concur.
DREW, C.J., and TERRELL and ROBERTS, JJ., dissent.
ROBERTS, Justice (concurring in part and dissenting in part).
I agree that the offense charged against the appellant Harold Johnson was manslaughter and not murder in the third degree, for the reasons stated by Mr. Justice Hobson in his opinion, and that the judgments finding him guilty of murder in the third degree and finding his brother, the appellant Alton Johnson, guilty of accessory before the fact to that offense, cannot stand. It is my firm opinion, however, that the cases should not be remanded for a new trial but, rather, that the lower court should be directed to enter a judgment finding Harold Johnson guilty of manslaughter, and finding Alton Johnson guilty of accessory before the fact to manslaughter. Section 924.34, Fla. Stat. 1953, F.S.A.
In the first place, the question of whether the evidence was sufficient to support a conviction against these appellants of the offenses of manslaughter and of accessory before the fact to manslaughter was neither presented nor argued by the parties in this court. Section 924.32(2), Fla. Stat. 1953, F.S.A., requires this court in a non-capital case to "review the evidence to determine if it is insufficient to support the judgment where this is a ground of appeal." (Emphasis added.) This question not having been argued here, it goes without saying that any assignment of error directed to this point must be deemed to have been abandoned.
In the second place, it is my opinion that the evidence was entirely sufficient to support judgments of conviction of these offenses.
Harold admittedly told the police two false stories as to his connection with the girl's death. His final version  the one he gave on the witness stand  was that at his brother Alton's request, he met his *189 brother and the girl in Pensacola, intending to get in touch with an abortionist named Margaret said to work at the tourist court where the attempted abortion took place. He had called the court the night before and was told that Margaret was not there. When he met his brother and the girl, he told them that the arrangements had not been completed, but he would take the girl on to the tourist court where she could stay while he completed the arrangements. The girl got into the car with him, and they went to the tourist court, arriving there some time before noon. He again inquired for Margaret, and was again told that she was not there. He and the girl went to a cabin, Harold registered, and ordered two beers and a coke. He told the girl he couldn't make arrangements now and she would have to spend the night. The girl said she couldn't do that and that she "would rather be dead and in hell than go through life like this." He stayed in the cabin about five minutes, drinking a beer, and then the girl requested him to "step outside." He thought the girl wanted him to step outside so she could undress and get into bed. He went out to his car, parked several feet from the cabin, and worked on his route lists (he was a salesman) for about fifteen minutes. Then he heard a moaning and groaning through the door, which was not completely closed, and went back inside. The girl was lying at the foot of the bed, on her side, with her knees drawn up. She was completely clothed, except for an undergarment lying on the floor. He wiped her face with a damp towel. She tried to rise and then fainted. He saw no blood on her, the bedclothes, or the towels. There were four clean towels in the bathroom. He put the undergarment on her and carried her out to the car. He shouted for his brother Alton (who was in the lunchroom of the tourist court), Alton came, and they took the girl to a hospital.
The girl never regained consciousness and died shortly after her arrival at the hopital  shown by the hospital record to be around 12:30 or 12:45 p.m. There was no sign of blood on her or on her clothes, and she was wearing a necklace and earrings.
Harold's story was contradicted in several important respects by the State's witnesses. It was shown that soon after Harold and Alton and the girl left the tourist court, the porter went to the door of the cabin and saw a bloody towel on the floor. He called the manager and his wife. They testified that the bedclothes and towels were bloody, that there was blood on a night stand by the bed and on the wall of the bathroom, and in the shower. The maid who cleaned the room testified to like effect. The maid found a piece of bloody wire on the floor by the bed when she cleaned the cabin. The wire (referred to by counsel for appellants as a "cut-off piece of coat hanger") could have caused the lacerations of the girl's placenta from which she died, according to the doctors' testimony.
The manager and employees of the tourist court denied that any one named Margaret had ever worked there or frequented the tourist court. They denied that Harold had inquired about a person named Margaret. The man whom Harold identified as his informant concerning Margaret and her abortionist activities denied all knowledge of such a person and, of course, that he had mentioned her to Harold. It is also significant that Harold and his brother did not secure from the girl's "friend" any money whatsoever to pay an abortionist for the operation, and Harold admitted that he did not inquire as to Margaret's price for an abortion. Harold made no attempt to explain the presence of the abortion instrument in the cabin. It is clear from the testimony, however, that the wire could not have been brought there by the girl. It is also significant that Harold lied about the presence of blood in the cabin  and it stands to reason that the blood was there, as testified to by the State's witnesses. Harold's counsel frankly states that there is no intimation that any person other than Harold or the girl performed the abortion attempt. If, as seems to be the contention of the appellant, the girl decided to attempt to do the abortion herself of her own volition *190 without waiting for "Margaret", why should the appellant have lied about the blood?
In our opinion, the jury had the right to find that there was no abortionist named Margaret or, even if there was, that Harold had no intention of employing her to do the job; that he came prepared with the wire, either to perform the abortion himself, or to provide the girl with the instrument to perform the abortion on herself while he "stepped outside" so as not to be actually physically present during the unlawful act. In either case he was, in my opinion, guilty of manslaughter, under Section 782.07, Fla. Stat. 1953, F.S.A.
The jury was fully instructed on the rules of law relating to manslaughter and to conviction on circumstantial evidence. They were charged, at defendants' request, that if the girl of her own volition and without the participation or aid of either of the defendants performed the operation upon herself, the jury should find them not guilty. They must have found that under any view of the evidence it could not reasonably be inferred that Harold was not a guilty participant in the abortion attempted to be performed in the tourist cabin; and, in my opinion, they were eminently justified in so finding.
While the evidence against Alton is somewhat weaker, there was, in my opinion, ample evidence to support a judgment convicting him of being an accessory before the fact to manslaughter; and, as noted above, no contention is here made that the evidence was not sufficient to support a conviction of this offense.
For the reasons stated, I would reverse the judgments appealed from and direct the trial judge to enter a judgment of guilty of manslaughter against the defendant Harold Johnson, and to enter a judgment of guilty of accessory before the fact to manslaughter against the defendant Alton Johnson.
DREW, C.J., and TERRELL, J., concur.

On Petition for Rehearing.
PER CURIAM.
In its petition for rehearing, the State takes an entirely new position with regard to a point which occupied almost all of the appellant's brief, as a comparison of the original brief of the State and its brief on petition for rehearing clearly demonstrates. In other words, the petitioner is raising for the first time an argument which should have been made originally in connection with one of the principal points of the case. It must be noted that this is a point of the case upon which the entire court is in agreement against the position now taken by the State.
Petitioner concedes that this court properly overruled the "legal reasoning" in Grimes v. State, Fla., 64 So.2d 920, and that legislative inactivity does not repudiate judicial construction. Petitioner, however, overlooks and fails to consider the corollary of this rule to the effect that long acquiescence by the legislature in a particular construction is entitled to great weight in interpreting the statute. We announced and relied upon this corollary in the opinion. The legislature has had since 1903 to amend the abortion statutes to eliminate the construction placed upon them by the Weightnovel case, Fla., 35 So. 856. It has not done so.
In the Weightnovel case this court construed three statutes, F.S. § 782.04, F.S.A. (murder in the third degree), F.S. § 782.10, F.S.A. (causing the death of a woman pregnant with a quick child is manslaughter) and F.S. § 782.07, F.S.A. (general manslaughter statute). The question was under which statute to fit an information almost identical with that in the instant case. It was held that, since to kill a woman pregnant with a quick child was specifically made only manslaughter, the legislature must have intended the killing of a woman pregnant with a child not quick to be only manslaughter and not third degree *191 murder, because it would be inconsistent to make a greater crime out of killing a woman not pregnant with a quick child than of killing a woman pregnant with a quick child. This construction is squarely in line with the universal rule that statutes must be so construed as to avoid absurd results. State Dept. of Public Welfare v. Bland, Fla., 66 So.2d 59; City of St. Petersburg v. Siebold, Fla., 48 So.2d 291; Haworth v. Chapman, 113 Fla. 591, 152 So. 663; Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152.
Petitioner, however, seizes upon the words, from the Weightnovel case [46 Fla. 1, 35 So. 858]:
"But the acts charged in the said count of the information can hardly be classed as murder in the third degree, or in any of the other statutory degrees of murder, without convicting the Legislature of the gross inconsistency of creating a crime of murder out of the unintentional killing of a woman, not pregnant with a quick child, in an attempt to procure a simple miscarriage of such woman, when * * * it is made manslaughter only to cause the death of a woman pregnant with a quick child where the intent was to abort or destroy such child. We are not justified in so construing the statutes as to bring about so absurdly inconsistent a result."
From the language we have emphasized above, the petitioner reasons that the court usurped the function of the legislature by passing upon the wisdom of a legislative act. Thus it is argued that we exceeded our authority in 1903 and re-exceeded our authority in 1956, although our construction was reached by the application of fundamental principles of law and could have been changed at any time by the legislature.
Petitioner argues that the crime charged cannot be manslaughter because the Weightnovel case held it to be manslaughter and the Weightnovel case was wrong because the court exceeded its authority. Petitioner also argues that the crime charged is, in petitioner's opinion, third degree murder. Therefore, because according to the petitioner's construction it is not manslaughter and under our construction it is not murder, it can be contended by the defense that no crime has been committed. Petitioner overlooks and fails to consider that we have twice held this crime to be manslaughter under the general manslaughter statute, and this makes it manslaughter, regardless of the construction which the petitioner seeks to place upon the statutes.
As an example of what the petitioner considers a logical interpretation of the statutes, it is argued by petitioner that more women are killed in abortion attempts before the child becomes quick than after and, therefore, the legislature was justified in making it a more severe crime to kill a woman not pregnant with a quick child than to kill one pregnant with a quick child, i.e., that the legislature simply took into consideration the volume of homicides and geared the degree of the offense to it, the greater degree to the greater volume. This appears to be not quite as tenable a construction as was adopted by this court in the Weightnovel case.
Since the point attacked by the State is one which the entire court, after the most extensive consideration, has concluded adversely to the State's position, and since no new light is cast upon the matter by the State's petition, the petition must be, and it is hereby,
Denied.
DREW, C.J., and TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., agrees to conclusion.
ROBERTS, J., dissents.