McCORD, Judge.
This is an appeal from a final judgment denying issuance of a writ of prohibition sought by the City of Daytona Beach (appellant) against the Civil Service Board (appellee). By the suggestion for writ of prohibition, the City contended that the Civil Service Board was without jurisdiction to review the City’s dismissal of police officer A. T. Elliott (appellee).
The City contends that the time within which the Civil Service Board could hold a hearing and review the dismissal of Elliott expired without a hearing having been held and the Board thereby lost jurisdiction. The answer to this question involves interpretation of sub-part B, Civil Service, § 25(D) of the Charter Laws of the City of Daytona Beach which provides as follows: “If the employee elects to have his grievance heard by the civil service board, he shall file his protest, in the form and within the time aforesaid, with the executive secretary of the board, and such protest shall be sufficient to require the board to conduct a hearing thereon within fifteen (15) days from the date such protest is filed; provided, however, that for good cause shown, the chairman of the board may grant a postponement of said hearing to either the city or the employee for an additional period not to exceed ten (10) days. At such hearing the board shall receive such testimony and evidence as may be pertinent to the order and protest thereon, and shall thereupon render its decision either affirming, modifying or reversing said order. The decision of a majority of said board shall be the decision of the board. There shall be no appeal from such decision of the board. Upon the failure of the board to hold a hearing within the time specified in this subsection, administrative jurisdiction to conduct further hearings shall be lost, and the employee shall be free to seek such judicial remedies as he may deem applicable, in the same manner as if no administrative remedies had been provided.”
The record in this case is somewhat confused and incomplete but from whát we have, it appears that on June 20, 1973, the City discharged Elliott but did not furnish him with an order stating the grounds upon which his discharge was based and did not furnish a statement of the facts upon which such grounds were predicated as is required by the City Charter. On June 27, Elliott filed his protest to the firing. (The City Charter requires that it be filed within ten days of receipt by the employee of the order of discharge.) Prior to June 23, the City filed a motion to reschedule appellant’s hearing before the board and to fix a time and date for said hearing (the date set for the original hearing is not shown by the record). The *170 City’s motion stated that in excess of 20 witnesses would be called by it and that it needed more time to prepare for the hearing. It requested that the hearing be held on July 23 stating that said time was within the time period required by § 25(D) of the Civil Service Act. The motion appears to have been granted because the record shows that on July 23, the hearing was convened by the board, the City expressly requesting the board to commence the hearing so that the board would not lose jurisdiction of the case. Mr. Tanner, speaking as special counsel for the City, told the Board:
“(I)f we do not call this matter for hearing, officially convene the Board with regard to the hearing, and at least call the hearing in session, I would respectfully suggest to the Board, Mr. Chairman, that this Board will be totally without jurisdiction.
So I would respectfully ask that the Elliott matter at least be called into session, and Mr. Fink can make his feelings known at that time.” (Emphasis supplied)
The board heard arguments by the attorneys on several motions and among them was a motion of Elliott to quash the order of dismissal of June 20 and to reinstate him on the ground that the dismissal did not comply with the City Charter. Acting on that motion, the board reinstated Elliott “until July 12” and accepted that as the date of dismissal. It appears that on July 12 the City had served notice upon Elliott advising him that he was discharged and setting forth the grounds for such discharge. Following this action by the board, it allowed Elliott’s attorney two days to file any additional or supplemental protests or objections he had to the dismissal and it continued the hearing until July 25, the attorney for the City stating that he had no objection to the continuance. Elliott filed a supplemental protest on July 25.
The hearing was reconvened on July 25, and after arguments concerning whether Elliott was entitled to certain discovery from the City there was a discussion regarding the City’s having subpoenaed Elliott’s attorney, Mr. Fink, to testify as a witness. Mr. Fink pointed out that he could not ethically represent Elliott at the hearing if he were called as a witness by the City and since the City had subpoenaed him to testify in the matter, he had no choice other than to secure, the services of another attorney to represent Elliott. Because the attorney who was chosen to represent Elliott was recovering from surgery, Mr.' Fink requested the board to continue the hearing for two or three weeks so that the new attorney would have sufficient time to prepare for the case. The City’s attorney then attempted to work out a date for further hearing when he would not be involved with a court conflict and it was ultimately determined that the hearing would be continued until August 14. The City made no objection to the new date. On August 13, Mr. Fink filed a motion for continuance, requesting that the hearing be continued to a later date on the ground that a material witness, Robert Palmer, deputy safety director, had recently undergone surgery and was unable to appear as a witness at that time. The attorney for the City noted that on the written motion that the City had no objection to a continuance pursuant to the motion. On August 14, the motion was presented to the board and in the discussion that ensued, the attorney for the City called attention to the fact that one of the members of the board was absent and stated, “I don’t know how you feel about it or how the City feels about it, but frankly, I’d like to have — as an individual, I’d like to have his participation.” After further discussion, the attorney for the City moved that the case be continued until September 12 and the board continued the hearing until that date. On September 12 the board and Elliott were ready to proceed with the hearing, but the board was precluded from doing so by the *171 issuance of Rule of Show Cause by the trial court upon the City’s Suggestion for .Writ of Prohibition.
As to the City’s contention that the board lost jurisdiction by not holding the hearing within the time permitted by the Municipal Charter, we note that the City did convene the hearing within the allotted time. Thus, the question is whether or not the board, after having begun the hearing, lost jurisdiction by not completing it during the prescribed time. We consider that the final sentence of the above quoted section of the City Charter illuminates the legislative intent of the time limitation. That sentence is as follows:
“Upon the failure of the board to hold a hearing within the time specified in this subsection, administrative jurisdiction to conduct further hearing shall be lost, and the employee shall be free to seek such judicial remedies as he may deem applicable, in the same manner as if no administrative remedies had been provided.” (Emphasis supplied).
This provision carries with it the connotation that if a hearing is held (begun or convened) within the time allotted, jurisdiction to conduct further hearings is not lost, but, if a hearing is not held within such time, jurisdiction is lost. This is the only construction which would not lend itself to absurd results and we cannot say that the legislature intended an absurdity. See City of Miami v. Romfh, 66 Fla. 280, 63 So. 440; Johnson v. State, Fla. 91 So.2d 185.
For example, if we accepted the construction here urged by the City, the board hearing could run right up to the last minute of the allotted time for hearing without the board having heard any of a respondent’s witnesses. Would it be logical to say that the legislature intended for the board to lose jurisdiction at that point? Or, much of the testimony could have been completed within the time allotted, but because of unforeseen circumstances (illness of a material witness or of a party) it could become impossible to complete the hearing within the time allowance. Must the Board then stop in mid-stream and leave the parties where it found them? We think not. We cannot construe the above charter provision to have such an absurd meaning.
Affirmed.
BOYER, Acting C. J., and MILLS, J., concur.