QUESTION: Is the consent of the committing court required before an accused person who has been committed to, and detained in, a mental institution under the procedures prescribed in subsections (a)(3) and (a)(5) of Rule 3.210, Florida Rules of Criminal Procedure, may be discharged from the mental institution if the criminal charges against him have not been nol prossed?
SUMMARY: Pending judicial clarification, a person accused of crime who has been found by the court to be mentally incompetent to stand trial in the foreseeable future and has been committed to a mental institution in civil proceedings in accordance with Rule 3.210(a)(5), CrPR, should not be released from the institution without the consent of the committing court unless the criminal charge has been nol prossed by order of the committing court. One of the basic and fundamental principles coming down to us from the common law is that a person may not be tried, sentenced, or executed while insane. Perkins v. Mayo, 92 So.2d 641, 644 (Fla. 1957); Brock v. State, 68 So.2d 344 (Fla. 1954); Horace v. Culver,111 So.2d 670 (Fla. 1959); Cioli v. State, 303 So.2d 82 (4 D.C.A. Fla., 1974). And since 1939 the statutes and/or Rules of Criminal Procedure of this state have specifically prescribed the procedure to be followed in the courts when a plea of insanity is made either as a defense to a criminal charge or to avoid a trial — or, after trial, the sentencing — of the accused. The statute relating to the fitness of an accused to stand trial (and from which Rule 3.210[a] ultimately derived) was enacted as s. 203 of the Florida Criminal Procedures Act of 1939 (Ch. 19554, 1939, Laws of Florida), and carried forward as s. 917.01, F.S. It provided in general terms for the committing of the accused to "the proper institution" when, after a hearing, it was determined by the court that the defendant was insane and thus could not properly be tried. After commitment, when the proper officer of the institution reported that the defendant was sane, another hearing was held. If sane, he was tried. If still insane, he was recommitted to the institution. The statute provided also that: No defendant committed by a court to an institution by reason of the examination referred to in this paragraph shall be released therefrom, without the consent of the court committing him. (Emphasis supplied.) Section 917.02, id., prescribed the procedure to be followed by the trial court in resolving the issue of insanity at the time the offense was allegedly committed; and s. 919.11, id., prescribed the form of verdict when a verdict of not guilty by reason of insanity was handed down by the jury and authorized the trial court to provide for the care of a defendant (including commitment to a mental institution) so acquitted who was considered by the court to be "manifestly dangerous to the peace and safety of the people. . . ." See also s. 909.17, id., requiring the defendant to give notice of an intent to rely upon the defense of insanity, and s. 921.09, prescribing the procedure when insanity is alleged as a cause for not pronouncing sentence. Sections 917.01, 909.17, and 917.02, supra, were carried forward verbatim into the 1967 Florida Rules of Criminal Procedure as subsections (a), (b), and (c), respectively, of Rule 1.210, except that the provision of s. 917.01 quoted above, requiring the consent of the court before the release of a defendant from the institution to which he was committed when incompetent to stand trial, was omitted — the committee's note for the omission stating that this provision "should be omitted from the rule but retained by statute." (Emphasis supplied.) Volume 33 F.S.A. (1967 ed.) p. 204. See also the order of the court promulgating the 1967 rules, stating that "[a]ll statutes not superseded hereby or in conflict herewith shall remain in effect as rules promulgated by the Supreme Court." Volume 33 F.S.A. (1967 ed.) p. XV. The statute providing the procedure for postponing sentencing when it was made to appear that defendant was insane, s. 921.09, supra, was carried forward into the 1967 Rules of Criminal Procedure as Rule 1.740, with the addition of some of the provisions of s. 917.01, supra, including the paragraph omitted from Rule 1.210 (and remaining in effect as a rule of the court under the court's order, supra) quoted above, requiring the consent of the court before the release of the defendant from the mental institution to which he was committed by the court; and s. 919.11, supra, relating to the jury's verdict of acquittal by reason of insanity and authorizing the court to commit to a mental institution a "manifestly dangerous" accused so acquitted, was readopted verbatim as Rule 1.460 of the 1967 Rules. (It should be noted that the numbering system of the Florida Rules of Criminal Procedure was changed in 1971 to substitute a "3" for a "1" in the prefix number. See In re Florida Rules of Criminal Procedure, 253 So.2d 421 [Fla. 1971].) Although neither s. 919.11, F.S., nor, until amended in 1974, the identical rule (Rule 1.460, later 3.460) specifically required the consent of the court before the release from a mental institution of an accused who had been committed following an acquittal by a jury because of insanity at the time of the offense, they were so interpreted by the courts. See Powell v. Genung, 306 So.2d 113
(Fla. 1975), and cases cited. The court said in Powell that the addition of the words "and such person shall be held in custody until released by order of the committing court" by a 1974 amendment to Rule 3.460 "did not actually constitute a change in procedure provided for by the rule but rather constituted a clarification." Footnote 1, 306 So.2d at 116. It can thus be seen that, from 1939 until the 1972 revision of the rules, the statutes and rules of criminal procedure in this state — either expressly or by necessary implication — have contemplated that a defendant committed to a mental institution because he was unfit to stand trial or to be sentenced (or after an acquittal by a jury on the ground of insanity) could not be released from the institution without the consent of the court under whose order he was committed. (An exception to this rule has been made where the charges against the defendant have been nol prossed so that no criminal charge against the accused was pending at the time he regained his sanity. See Trippodo v. Rogers, 54 So.2d 64 (Fla. 1951), and Jones v. O'Connor, 185 So.2d 167 (Fla. 1966), distinguished in Powell, supra.) There is also authority for the proposition that, even in the absence of statute or rule, the court retains jurisdiction over an insane defendant charged with crime and has inherent power to compel the accused to attend court to answer the charge. See State ex rel. Deeb v. Campbell,167 So. 805, 807 (Fla. 1936), decided prior to the adoption of the 1939 Code of Criminal Procedure, Ch. 917, supra. It was against this background that the 1972 revision of the Rules of Criminal Procedure, including an amendment to Rule 3.210, supra, was adopted. See In re Florida Rules of Criminal Procedure,272 So.2d 65 (Fla. 1972). The revised Rule 3.210(a) retained the provisions for a hearing by the court and, in addition, provided in subsection (a)(3) for the commitment of the accused to the Division of Mental Health for hospitalization under the provisions of s. 394.467, F.S. — the statute prescribing the procedure for the hospitalization of a person who is mentally ill and, because of his illness, "is likely to injure himself or others if allowed to remain at liberty, . . . ." The revision also added an additional subsection (a)(5), providing as follows: (5) If at any time after such commitment the Court decides, after hearing, (1) that there is no substantial probability that the defendant will become mentally competent to stand trial within the foreseeable future or (2) that no progress is being made toward that goal, it shall enter an order accordingly and shall find and adjudge the defendant not guilty by reason of insanity and forthwith direct the institution of civil proceedings for the commitment of the defendant. The defendant shall remain in custody until determination of the civil proceedings. (Emphasis supplied.) It carried forward almost verbatim the following provision of former Rule 3.210(a) (which had also been included in s. 917.01, supra, and Rule 1.210): "If the defendant is declared insane during the trial and afterwards declared sane, his other uncompleted trial shall not constitute former jeopardy." (Emphasis supplied.) As indicated in the Author's Comment, Vol. 33 F.S.A., 1975 ed., at p. 365, subsections (a)(3) and (a)(5) of Rule 3.210 were revised to accord with the decision of the United States Supreme Court in Jackson v. Indiana, 406 U.S. 715 (1972). It was there ruled that, by subjecting a mentally defective person accused of crime to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all other persons not charged with offenses, thus condemning him to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by ordinary civil commitment procedures, the State of Indiana had deprived the accused of the equal protection of the law. It was also held that an indefinite commitment of a criminal defendant solely on account of his lack of capacity to stand trial violated due process. The court said: We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. . . . (Emphasis supplied.) By the revisions to Rule 3.210(a), supra, the Florida Supreme Court has made applicable to an accused who is committed to a mental institution to await trial the same standards for commitment — subsection (a)(3) — and the same civil proceedings for detention — subsection (a)(5) — as are applied to persons who are involuntarily committed to such institutions without having been charged with a crime, in compliance with the mandate of Jackson, supra. However, there is nothing in Jackson to indicate that it is unlawful for a state to require the consent of the committing court before a person who has a criminal charge pending against him may be released from a mental institution; and there is nothing in the revision to Rule 3.210 to indicate that the Florida Supreme Court intended to change the long-standing procedural requirement that the consent of the committing court should be obtained before an insane defendant, subsequently reported to be sane, may be released from a mental institution. Cf. Daniels v. O'Conner, 243 So.2d 144 (Fla. 1971), stating that "[t]he interest of the State in the safekeeping of the accused until such time as he may be brought to trial to establish his guilt or innocence of the charge undoubtedly accounts for the failure of the Legislature to authorize his release into private custody or his discharge" in ruling upon the validity of s. 917.01, supra. See also s. 394.469, F.S., providing for the discharge of a patient from a mental institution, which specifically excludes patients "under a criminal charge" from the authority granted to the administrator in this respect. While revised Rule 3.210(a) provides, in effect, that a hopelessly insane defendant shall be adjudged not guilty by reason of insanity and thereafter committed to a mental institution for detention in accordance with the civil proceedings available to persons not charged with crime, it provides also that "his other uncompleted trial shall not constitute former jeopardy," as did the former statute, s. 917.01, F.S., and its successor Rule 1.210 (renumbered as Rule 3.210). As noted above, this statute and rule required the consent of the court before an accused person against whom a criminal charge was pending could be released from a mental institution; and even in the absence of an express provision to this effect, an insane person who had been acquitted by the jury because of insanity and committed under Rule 3.460, supra, could not be released without the consent of the committing court. Powell v. Genung, supra. And see s.394.467(4)(h), F.S., as amended by Ch. 75-305, Laws of Florida, which now specifically provides that the committing court "shall retain jurisdiction" in the case of a patient who has been committed to a mental hospital under Rule 3.460. It is a universal rule that statutes should be interpreted so as to avoid absurd results or conclusions, if any other construction is possible. Sharon v. State, 156 So.2d 667, 679 (3 D.C.A. Fla., 1963); Johnson v. State, 91 So.2d 185, 191 (Fla. 1957); State Department of Public Welfare v. Bland, 66 So.2d 59, 61 (Fla. 1953); Haworth v. Chapman, 152 So. 663, 665 (Fla. 1933). These procedural rules, superseding former statutes in conflict therewith, should be similarly construed; and in light of the decision in Powell — ruling that the committing court retained jurisdiction over an accused defendant who had been tried and acquitted by the jury on the ground of insanity even though the applicable rule did not expressly so provide — it plainly makes no sense at all to ascribe to the Supreme Court an intent to abdicate the committing court's jurisdiction over an accused insane person who has never been tried on the question of his guilt or innocence of a charge which is apparently still pending against him. See Rule 3.210(a)(7), supra, specifically providing that the "other uncompleted trial" (Emphasis supplied.) of an accused declared insane during that trial "shall not constitute former jeopardy." And in the absence of a clear and unambiguous declaration of such an intent in the rule in question, such an absurd result should not be reached under the rule of construction referred to above. In view, then, of the decision in Powell, as well as the inherent jurisdiction of the courts over an insane person against whom a criminal charge is pending (Deeb v. State, supra) and the long history of the criminal procedure statutes and/or rules requiring the consent of the committing court before the release from a mental institution of an insane person against whom a criminal charge is pending or who has been acquitted by the jury on the ground of insanity, I can reach no conclusion other than that the consent of the court is required before the release of an accused person who has been committed to and detained in a mental institution under paragraphs (a)(3) and (a)(5), respectively, of Rule 3.210 because unfit to stand trial unless, of course, the charges against him or her have, in the meantime, been nol prossed by order of the committing court. Accordingly, pending judicial clarification, your question is answered in the affirmative.