## MALLUE, et al v. FLORIDA DEPARTMENT OF STATE, et al.
No. 78-1347.
Circuit Court, Leon County.
August 23, 1978.

Henry E. Mallue, Jr., Williamsburg, Va., for the plaintiffs.

Robert L. Shevin, Attorney General, Douglas C. Kearney, Assistant Attorney General, for the defendants.

BEN C. WILLIS, Circuit Judge.

*Final summary judgment:* This cause came on for hearing on the complaint of plaintiffs, the answer of defendants, and on the defendants' motion for summary judgment, and the court having heard argument of counsel, and being otherwise advised, it is ordered and adjudged —

1. There is no genuine issue of material fact and this case may be resolved on questions of law only.

2. The plaintiffs, electors of Pinellas County, seek declaratory judgment and injunctive relief with relation to proposed Revision No. 3 by the Constitution Revision Commission, which is among the several proposals of that commission to be submitted to the electorate at the November 1978 general election, for ratification or rejection with regard to amendments to the state constitution. They assert that such proposal is invalid and void on its face because it is mathematically impossible to apportion the Florida Senate and House of Representatives according to the standards mandated in the proposal. In short, it is urged that the ratification of such a provision would result only in an impasse and utter frustration of complying with its standards, and that the public and the state should be spared such a paralysis in an important structure of an essential function of government. A declaration of rights is sought under Chapter 86, Florida Statutes, and also sought is that the Department of State be enjoined from conducting or furthering the conduct of any election dealing with said Revision No. 3.

3. The defendants raise a number of defenses relating to the standing of plaintiffs to bring the action, the propriety of declaratory relief, the absence of necessary parties, and other matters which would avoid any judicial treatment of the validity vel non of the proposal. The court deems that the plaintiffs have standing to seek declaratory and other relief and will proceed to examine

the matter to determine if Revision No. 3 is so defective as to constitute a nullity even if ratified by the electorate.

4. Revision No. 3 proposes a revision of Section 16, Article III of the state constitution to require single member legislative districts, and to establish reapportionment standards and a commission to prepare a reapportionment plan for legislative and congressional districts. So says the title. It would require mandatory reapportionment of congressional and legislative districts every ten years commencing in 1981, with all legislative districts being single-member districts. Subsection (a). The Senate shall consist of not less than 30 nor more than 40 districts and the House of Representatives of not less than 80 nor more than 120 districts. A reapportionment commission is required to be created with its members to be selected by the governor from nominees by the president of the Senate, the speaker of the House, the minority leaders of the House and Senate, and the chairperson of the political party which received the second highest vote in the last gubernatorial election. The governor also appoints one person selected by himself, or herself, as the case may be, and the six commissioners select a seventh person to serve as chairperson. Other provisions are made with regard to the structure, mechanics, and details of the function of the commission. Subsection (b). Certain reapportionment standards are prescribed in subsection (c). The districts, both congressional and legislative, are mandated to "be as nearly equal in population as practicable," based on the federal census. A congressional district may not "have a population which varies more than one per cent from the average population of all congressional districts in the state." It is the next two sentences that produce the alleged fatal contradiction and impossibility of utilization. It is provided —

> "In no case shall a single legislative district have a population which varies more than five per cent from the average population of all districts of a house." (Third sentence) and: "In no case shall the average of the absolute values of the population deviations of all districts of the respective house vary by more than two per cent *from* the average population of all districts." (Fourth sentence.) (Italics added.)

The third sentence produces no problem. It prescribes a standard whereby the population of a district may not vary more than five per cent from the average population of all districts. This would provide a tolerance of five per cent of either more or less from the norm of the average population of all districts of the house

involved. However, the fourth sentence, if literally applied, would prescribe an impossible mathematical standard. It provides that "the absolute values of the population deviations of all districts" may not "vary by more than two per cent from the average population of all districts." This would mean that the average of all the "deviations" must be at least 98 per cent of the average population of all the districts. It is at once apparent that this is a mathematical impossibility and a palpable absurdity. The plaintiffs contend that because of this posture of an impossible structure of the houses of the legislature the measure is void and a nullity and should be promptly eliminated from further useless processing toward a spurious inclusion in the provisions of our organic law. The defendants contend that the intent of the framers of the measure is clear and that it is obvious and unambiguous that the use of "from" was intended to ascribe what would have been accurately described by the use of the preposition "of," and that the court should give the measure a construction that would be manifestly in accord with the clear intent of the framers. They contend that the third sentence sets a possible variance on not more than five per cent in a district from the average population of all districts, but that the fourth sentence sets a further restriction on the average of the absolute values of all deviations to not exceed two per cent of the average population of all the districts involved. Using the example of a total population of 50,000 and ten districts, there would be an average population of 5,000 per district. Under the third sentence five per cent tolerance, a district might be as much as 5,250 or as little as 4,750. If each district had a maximum variance, there would be an "average of the absolute values of the population deviations of all districts" of 250. As the average population of all districts is 5,000, if application is made to a limitation of two per cent "from" this 5,000 average, then the average of absolute value of population deviation would be a minimum of 4,900 (5,000 less two per cent of 5,000 or 100 = 4,900). On the other hand, if the interpretation is to use the equivalent of the word "of" instead of "from" as applied to the average population of the district, then the two per cent application would give a figure of 100. With a 250 average variation, it would be necessary to reduce the variances so that the average of all variances would not exceed 100. This could be accomplished by readjusting the districts to reduce the average within the two per cent figure.

5. The court deems that its powers and duties in this case are the same as would prevail if there were an existing constitutional provision involved rather than a proposal to be submitted to the electorate for adoption or rejection. There is no power in the court to tamper with the constitution, Gibson v. Fla. Leg. Inv. Com.,

Fla. 1959, 108 So.2d 729, p. 740, and by the same token to tamper with the proposal of a Constitutional Revision Commission. However, the power of courts to construe constitutional provisions is undoubted, and there are certain fully established rules of construction which must be followed to reach an interpretation. If the language is clear and not entirely unreasonable or illogical in its operation the courts have no power to go outside the bounds of the written provisions in search of excuses to give a different meaning to words used. City of St. Petersburg v. Briley, Wild & Assoc., Inc., Fla. 1970, 239 So.2d 817. The fundamental object in construing a constitutional provision is to ascertain and give effect to the intentions of the framers and adopters, and to interpret such provision so as to fulfill this intention rather than defeat it. State ex rel. Dade County v. Dickinson, Fla. 1970, 230 So.2d 130. The intention of the framers and adopters constitutes the "spirit" of the constitution, which is as obligatory as its express provisions, though such spirit must be found to clearly flow from express mandate in the light of circumstances and historical events leading to its promulgation. Amos v. Matthews, 1930, 99 Fla. 1, 126 Fla. 308.

6. The court may take judicial notice that there has been much dissatisfaction with the existence of multimember legislative districts and that the framing of Revision No. 3 was in furtherance of a purpose to establish single member districts. Also, it is well known that U. S. Supreme Court decisions have established the so-called "one-man, one vote" principle in legislative apportionment so that single member districts of a house must be substantially equal in population to meet constitutional requirements of equal protection of the laws. Baker v. Carr, 369 U. S. 186, 7 L.Ed. 2d 663, 82 S. Ct. 691, and its numerous and varied progeny. Also, there has always been concern to avoid the ability to "gerrymander" districts to favor particular interests, groups or political entities. Indeed, in Revision No. 3, in subsection (c)(4) and (5), the use of demographic information or information about incumbent legislators, affiliation of voters or previous election results are prohibited in prescribing the districts and no district may be drawn to dilute the voting strength of any racial or minority group. With the obvious purposes of maintaining constitutionally permissible apportionment in districts of substantially equal population, but at the same time recognizing the need for some flexibility to meet other objectives of compactness, convenient size and recognition of local political subdivision boundaries (see subdivision (c)(2) and (3)), there were two standards prescribed for district population. The third sentence prescribed a maximum tolerance of five per cent from the average population of all districts. The fourth sentence intended a further restriction that the average deviation of all districts

would not exceed two per cent of such average population of the districts.

7. The intent of the framers having been ascertained, the question arises as to whether the court may give effect to that intent, though the use of "from" in the fourth sentence would not be consistent with such an intent, but would produce an absurdity and a complete frustration of giving effect to any of Revision No. 3. The Supreme Court in In re: Advisory Opinion, 343 So.2d 17, held that certain disharmonious provisions in the 1968 constitution with regard to the time functions of the Constitutional Revision Commission may be resolved by ascertaining the intent of the provision and prescribing a course productive of carrying out the intent and objectives of the measure. It is said that constitutional interpretation is actuated by the rule of reason and unreasonable or absurd consequences should, if possible, be avoided. Moreover, such interpretation may be controlled by their practical operation and effect, and where the general welfare is involved, constitutional questions should be approached from a pragmatic rather than a legalistic point of view. See 6 Fla. Jur. (*Constitutional Law*, Sec. 16) p. 284-5. Principles of constitutional construction are in general the same as those governing the construction of statutes. 6 Fla. Jur. (*Constitutional Law*, Sec. 12) p. 281. It is said to be the universal rule that statutes must be so construed as to avoid absurd results. Sharon v. State, Fla. 3rd DCA 1963, 156 So.2d 677, City of Miami v. Romfh, 66 Fla. 280, 63 So. 440; and Johnson v. State, Fla. 1956, 91 So.2d 185.

8. It is, therefore, concluded that Revision No. 3, if adopted by the electorate, would be construed to harmonize the third and fourth sentences to give effect to the obvious intent that would have been better expressed by using the word "of" where the word "from" is employed in the fourth sentence, and to regard the use of "from" as an inadvertent misuse of the word when another result was sought to be achieved. With that conclusion it is found that no injunctive or other coercive relief is appropriate in behalf of the plaintiffs. However, they are entitled to a declaration of rights under Chapter 86, Florida Statutes.

9. Accordingly, it is adjudged and declared that Revision No. 3, submitted by the Constitution Revision Commission for adoption or rejection in the 1978 general election, as construed hereinabove, proposes what would be, if adopted, a rational, reasonable and otherwise valid amendment to the state constitution; and that, except for the declaration herein rendered, all prayers of plaintiffs for relief are denied and summary judgment in accordance herewith is hereby rendered.