306 So.2d 113 (1974)
James POWELL, Petitioner,
v.
Don GENUNG, Sheriff, Pinellas County, Florida, and Peter Ivory, M.D., Superintendent, Florida State Hospital, Chattahoochee, Florida, Respondents.
No. 45224.
Supreme Court of Florida.
December 4, 1974.
Rehearing Denied February 5, 1975.
*114 Arnold D. Levine of Levine, Freedman & Hirsch, Tampa, for petitioner.
James T. Russell, State's Atty., Denis M. deVlaming, Asst. State's Atty., and James G. Mahorner, Tallahassee, for respondents.
ROBERTS, Justice.
This is an original proceeding in Habeas Corpus. We issued the writ and respondents have filed a return.
Petitioner was charged with murder in the first degree and was found by the jury to be not guilty by reason of insanity. The trial court, thereafter, denied petitioner's motions for entry of judgment of acquittal and for discharge, and after considering the evidence adduced at the trial, the plea of not guilty by reason of insanity and the jury's verdict, the trial judge concluded that petitioner is manifestly dangerous to the peace and safety of the people and should not be allowed to go at large, and ordered him committed to the state hospital for treatment pursuant to Rule 3.460, Fla. Cr.R.P. On May 24, 1973, the trial court entered an order requiring that defendant be transported to the Florida State Hospital at Chattahoochee, Florida, for appropriate treatment. Specifically the trial judge in said order stated:
"It is therefore ORDERED AND ADJUDGED that the defendant, JAMES POWELL, shall be transported to the Florida State Hospital, Chattahoochee, Florida, by the Sheriff of Pinellas County, Florida, and delivered to the Superintendent thereof, and that he be there confined, detained, and treated until the further order of the court, and in the event said defendant shall cease to be manifestly dangerous to the peach (sic) and safety of the people, said fact shall be reported to this court for further order." (emphasis supplied)
By letter of January 22, 1974, Respondent Peter Ivory, Superintendent of the Florida State Hospital, advised the trial court, as follows:
"Mr. James Powell was admitted to the Florida State Hospital on June 20, 1973, as involuntary incompetent. His treatment has been completed and further hospitalization is not indicated at this time. He has been found no longer dangerous to the safety of others."
*115 The cause then came on to be heard before the trial court on the report of the Clinical Director of the Florida State Hospital at Chattahoochee and the trial judge ordered that defendant be returned to the court for further proceedings. Following a hearing, the trial court entered an order dated March 12, 1974, denying petitioner's motion to compel release and explicitly stating:
"The Court finds that it has jurisdiction of the person of James Powell and of this cause.
"The recommendations of the hospital and treating physicians are based upon the assumption that this court would have continuing jurisdiction over James Powell after his discharge from hospitalization and consequently could recognize and prevent future narcotic intoxication. This assumption is incorrect.
"This court finds from the evidence that the underlying psychosis remains even though the symptoms are in a state of remission. The patient remains a manifest danger to himself and others and therefore his hospitalization should be continued.
"It is thereupon Ordered that the Motion To Compel Release is denied.
"It is further ORDERED AND ADJUDGED that the Sheriff of Pinellas County, Florida or his duly appointed deputy shall forthwith transport the said JAMES POWELL to the Florida State Hospital, Chattahoochee, Florida; the Superintendent thereof shall accept the said James Powell to be there confined, detained and treated until the further order of this Court, and that in the event said JAMES POWELL shall cease to be manifestly dangerous to the peace and safety of the people, said fact shall be reported to this Court for further order."
By the instant petition for writ of habeas corpus, petitioner seeks an order from this Court declaring the trial court's orders of May 24, 1973, and March 12, 1974, to be null and void, and authorizing petitioner's release pursuant to Chapter 394, Florida Statutes.
Respondents, Peter Ivory, Superintendent, Florida State Hospital at Chattahoochee, and Don Genung, Sheriff of Pinellas County, Florida, have filed separate returns to the writ of habeas corpus.
Respondent, Sheriff Genung, correctly states that although the letter of the Superintendent states that the petitioner is no longer dangerous to the safety of others, the committing court after conducting a thorough hearing on March 6, 1974, found that petitioner was in fact manifestly dangerous to himself and others. This finding by the trial court is fully supported by the transcript of the hearing held on March 6, 1974, and the evidence presented at this hearing sustains and justifies the trial court's finding as to the necessity for the continued treatment of petitioner at the state hospital. Pursuant to and consistent with Rule 3.460, Fla.Cr.R.P., which provided prior to amendment, and at the time of commitment, as follows:
"Rule 3.460 Acquittal for Cause of Insanity. When a person tried for an offense shall be acquitted by the jury for the cause of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause. If the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the people, the court shall order him to be committed to jail or otherwise to be cared for as an insane person, or may give him into the care of his friends, on their giving satisfactory security for the proper care and protection of such person; otherwise he shall be discharged."
This rule is substantially identical to Section 919.11, Florida Statutes, the statutory precursor of Rule 3.460, which statutory provision was repealed by the Legislature by Chapter 70-339, Laws of Florida, as having been superceded by the Rules of Criminal Procedure. Section 919.11, F.S., *116 had been interpreted by the courts of this state to allow continuing jurisdiction over petitioner in the trial court to determine by subsequent hearing and order whether defendant was still manifestly dangerous to the public. State v. Eaton, 161 So.2d 549 (Fla.App. 1964), Oksten v. State, 173 So.2d 489 (Fla.App. 1965), cert. den. 177 So.2d 11 (Fla. 1965), U.S. cert. den. 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105. This Court by amendment clarified[1] the rule which presently provides as follows:
"Rule 3.460 Acquittal for Cause of Insanity. When a person tried for an offense shall be acquitted by the jury for the cause of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause. If the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the people, the court shall order him to be committed to jail or otherwise to be cared for as an insane person and such person shall be held in custody until released by order of the committing court, or may give him into the care of his friends, on their giving satisfactory security for the proper care and protection of such person; otherwise he shall be discharged."
The trial court properly retained jurisdiction over petitioner to enter the aforestated orders. In accordance with Rule 3.460, he continues to be held under the jurisdiction of the circuit court of Pinellas County, Florida until released by order of that court. State v. Eaton, supra, and Oksten v. State, supra.[2]
By the instant proceedings to determine whether petitioner, who had been found not guilty by reason of insanity of murder in the first degree, no longer posed a dangerous threat to the safety of himself and others, he was afforded all constitutional due process requisite in that, inter alia, he was allowed the right to be confronted with the witnesses against him, to cross-examine them, and to offer evidence of his own. Following his commitment in 1973, he requested a hearing to determine whether he is still manifestly dangerous to the peace and safety of the people. The committing court granted this full hearing whereat petitioner was represented by counsel, and at the conclusion of which the trial judge properly determined that petitioner continues at the present time to pose a danger to others. See Oksten v. State, supra, and State v. Eaton, supra.[3]
Petitioner's reliance on Jones v. O'Connor, 185 So.2d 167 (Fla. 1966), and Trippodo v. Rogers, 54 So.2d 64 (Fla. 1951), as authority for his release is misplaced as evidenced by the facts thereof. In both Jones, supra, and Trippodo, supra, the State entered a nolle prosequi to the charges. This Court in Jones, supra, determined that a nolle prosequi of a first degree murder charge where the defendant was found insane and committed to the state hospital eliminated the necessity of the committing court's approval as a condition of release. In Trippodo, supra, the defendant was charged with first degree murder, was adjudged to be insane and incapable of standing trial, was committed to the state hospital for treatment and safekeeping, and the indictment against him *117 was unconditionally nol prossed. He was subsequently found to be sane by the Superintendent and medical staff of the Florida State Hospital. This Court determined that in view of the fact that the criminal charge of murder in the first degree had been unconditionally nol prossed upon motion of the State Attorney, the provisions of Section 917.01, Florida Statutes (1949),[4] requiring the consent of the committing court as a condition precedent to release of the petitioner were not applicable. Sub judice, petitioner was not committed pursuant to Section 917.01, Florida Statutes, but rather was found sane to stand trial, was found not guilty by reason of insanity, was adjudged not guilty by reason of insanity and was committed by order of the trial court pursuant to Rule 3.460, Florida Criminal Rules of Procedure. Jones, supra, and Trippodo, supra, are not controlling in the instant case.
The finding by the trial judge that petitioner is still manifestly dangerous is supported by the evidence adduced at the hearing. Accordingly, in view of the abovestated reasons, we find no merit in the petition for habeas corpus. The writ heretofore issued must be and is hereby
Discharged.
ADKINS, C.J., and BOYD, McCAIN, DEKLE and OVERTON, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
This is an original habeas corpus proceeding wherein we issued the writ and Respondents filed a return. The facts as developed by the pleadings are as follows:
Petitioner was tried by a jury for first degree murder and found not guilty by reason of insanity. Thereafter the trial court denied Petitioner's motions for entry of judgment of acquittal and for discharge. If further found Petitioner manifestly dangerous to the peace and safety of the people and ordered him to the State Hospital for treatment pursuant to Rule 3.460, Cr. P.R. On May 24, 1973 a subsequent order was entered providing in part:
"[T]he defendant, JAMES POWELL, shall be transported to the Florida State Hospital, Chattahoochee, Florida by the Sheriff of Pinellas County, Florida, and delivered to the Superintendent thereof, and that he be there confined, detained and treated until the further order of the court, and that in the event said defendant shall cease to be manifestly dangerous to the peach [sic] and safety of the people, said fact shall be reported to this Court for further order." (Emphasis supplied.)
By letter of January 22, 1974, Respondent Superintendent of the State Hospital advised the trial court that:
"Mr. James Powell was admitted to the Florida State Hospital on June 20, 1973, as an involuntary incompetent. His treatment has been completed and further hospitalization is not indicated at this time. He has been found to be no longer dangerous to the safety of others."
Petitioner was then returned to the trial court for further proceedings. Following a hearing, the trial court entered an order on March 12, 1974, denying Petitioner's motion for release and ordering Petitioner returned to the State Hospital, notwithstanding the recommendation of the hospital staff.
Petitioner seeks an order of this Court declaring null and void the trial court orders of May 24, 1973 and March 12, 1974, and authorizing his release pursuant to Chapter 394, F.S., known as the Baker *118 Act, and more particularly Sections 394.467 and 394.469 thereof.
Respondents urge essentially that the trial or "committing" court retained continuing jurisdiction over Petitioner, and Petitioner may not be discharged without further order thereof since (1) Rule 3.460, as amended, so provides and (2) the Baker Act applies only to civil and not criminal proceedings. I disagree.
Rule 3.460, as amended and effective January 16, 1974 (see 287 So.2d 678), provides:
"When a person tried for an offense shall be acquitted by the jury for the cause of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause. If the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the people, the court shall order him to be committed to jail or otherwise to be cared for as an insane person and such person shall be held in custody until released by order of the committing court, or may give him into the care of his friends, on their giving satisfactory security for the proper care and protection of such person; otherwise he shall be discharged." (Emphasis supplied.)
The emphasized language, however, was added by amendment subsequent to the time of Petitioner's initial commitment pursuant to the Rule, and may not be made to retroactively confer continuing jurisdiction over Petitioner in the trial court if there was none prior to the amendment. The trial court was bound to follow the law as it existed at the time of Petitioner's committal for treatment.
Respondents rely alternatively on Oksten v. State, Fla.App. 1965, 173 So.2d 489, and State v. Eaton, Fla.App. 1964, 161 So.2d 549, as authority for continuing jurisdiction over Petitioner prior to amendment of the Rule. In both cases cited, the Second District Court held that where petitioners were committed under Section 919.11, F.S., the statutory precursor to Rule 3.460 prior to amendment, there was sufficient evidence before the trial courts to deny petitioners' motions for discharge. Oksten and Eaton were decided prior to the enactment of the Baker Act, which must be read in pari materia with the Rule. Together they govern the commitment and discharge of persons committed pursuant thereto. Hence, Oksten and Eaton are no longer controlling in such circumstances.
Nor do I agree with Respondents that the Baker Act is applicable only to civil proceedings. The Act by its express language shows the intent of the Legislature to apply it to civil and criminal proceedings alike, and we are bound to observe that intent. Section 394.467, generally, provides for admission criteria and procedures, hearing, and continued hospitalization of involuntary patients. Subsection (3) thereof expressly provides for commitment under the Florida Rules of Criminal Procedures, inter alia, which clearly contemplates commitment as in the instant case under Rule 3.460. Subsection (4) thereof imposes guidelines for the exercise of the hospital administrator's power to discharge such involuntary patients as follows:
"(d) The administrator shall not transfer any patient to voluntary status when he has reasonable cause to believe that the patient is dangerous to himself or others. In any case in which the administrator has reasonable cause to believe that an involuntary patient is dangerous to himself or others, the administrator shall request continued hospitalization. In any case in which a request for continued hospitalization is necessary, but the administrator after reviewing the case believes there is not reasonable cause to believe that the patient meets the criteria for involuntary hospitalization at the time of application for transfer to voluntary status and the patient needs continuing hospitalization, the patient *119 shall be transferred to a voluntary status."
Most importantly, Section 394.469 provides in part:
"(1) Power to discharge.  At any time a patient is found no longer to meet the criteria for involuntary hospitalization, the administrator may:
"(a) Discharge the patient, unless the patient is under a criminal charge, in which case he shall be transferred to the custody of the appropriate law enforcement officer.
"(b) Transfer the patient to voluntary status on his own authority or at the patient's request, unless the patient is under criminal charge; or
"(c) Place an improved patient, except a patient under a criminal charge, on convalescent status in the care of a community facility.
"(2) Notice.  Notice of discharge or transfer of status shall be given to the patient, his guardian or representatives, and, if the patient's hospitalization was by order of a court, the court which entered such order." (Emphasis supplied.)
Thus, it is abundantly clear that the Baker Act was intended to apply to both civil and criminal commitment proceedings, and intended to be read in pari materia with Rule 3.460 except to the extent that any contradictory language in the Rule validly supersedes the statute. The Rule prior to admendment, applicable herein at the time of Petitioner's commitment, did not provide for continuing custody until released by order of the committing court; rather, it provided for commitment alone. On the other hand, the Baker Act, also applicable at the time of Petitioner's commitment, expressly provided procedures and guidelines for discharge as well as commitment. In failing to so construe the Rule and the Act together, the trial court erred and exceeded its jurisdiction.
Petitioner relies upon Jones v. O'Connor, Fla. 1966, 185 So.2d 167, and Trippodo v. Rogers, Fla. 1951, 54 So.2d 64, as authority for his release. The facts show Petitioner's reliance thereon is misplaced. In Jones, supra, this Court held that a nolle prosequi of a first degree murder charge where the defendant was found insane and committed to the State Hospital eliminated the necessity of the committing court's approval as a condition of release. In Trippido, supra, where a defendant charged with first degree murder was adjudged insane and committed to the State Hospital for treatment, the indictment was nol prossed and the defendant was subsequently found sane by the hospital staff, the defendant was entitled to release notwithstanding the statute requiring the committing court's consent to release which had not been given. Unlike the instant case, in Jones and Trippodo both defendants were found insane and incapable of standing trial and were committed pursuant to Section 917.01, F.S. (Since repealed. See Rule 3.210, Cr.P.R.) Subsequently, all charges against both defendants were dropped without trial or an acquittal by reason of insanity. As we said in Trippodo:
"Section 917.01, Florida Statutes 1949, F.S.A., provides a method by which a trial court having jurisdiction of the defendant in criminal proceedings, may, where the accused is thought to be insane, conduct a hearing in the pending cause, without the necessity for a separate independent proceeding before the county judge, as contemplated by sections 394.20-22, Florida Statutes 1949, F.S.A. If the trial court, after a hearing on the issue, decides that the defendant is sane, it may proceed with the trial; but if it decides that the defendant is insane, it has the power to commit him to an institution for the insane until he has regained his sanity. In order to insure the return of the defendant to the court in which the criminal proceeding is pending, so that he may be available *120 to answer the pending criminal charge, the statute provides that no defendant committed by a trial court to an institution for the insane shall be released from such institution until the proper officer of such institution has reached the opinion that he is sane and has secured the consent of the committing court for his release." (54 So.2d, at 65.)
Petitioner herein was not committed pursuant to Section 917.01 (or Rule 3.210), but was instead found sane to stand trial, adjudged not guilty by reason of insanity and committed under Rule 3.460. The distinctions are obvious; Jones and Trippodo are not here controlling, but the underlying rationale analogously appears to support the view a discharge is in order where no charges are pending and petitioner is found to be sane.
In passing, I note that no criminal charges are now pending against Petitioner  nor can there be any new ones lodged against him on the facts involving the murder charge because of double jeopardy  which would adversely affect his eligibility for discharge under Section 394.469. Furthermore, it is not necessary to express an opinion on Petitioner's allegations that Rule 3.460 is unconstitutional as applied on the grounds that it provides no criteria for release and in no way depends on the recommendations of the hospital staff. Nor do I express an opinion as to the findings of the trial court or the testimony presented thereto at the hearing held on March 6, 1974 upon Petitioner's second motion for release, nor upon the effect of the amendment of Rule 3.460 (effective as of January 16, 1974) on its interaction with the pertinent provisions of the Baker Act. Whether further retention of the Petitioner under such circumstances is an abuse of discretion need not be passed upon inasmuch as the controlling law existing at the time of Petitioner's committal now requires his discharge.
By way of summation, the trial court had no continuing jurisdiction over Petitioner subsequent to his commitment under the Rule, and those portions of the trial court order of May 24, 1973 making Petitioner's release conditioned upon further court order, and all of the trial court order of March 12, 1974, were made without authority of law. Petitioner should be returned to the custody of the State Hospital and held there for treatment until his discharge pursuant to the appropriate procedures of the Baker Act, without further order of this Court or the trial court below.
Properly and logically applied, the Baker Act is a legislative enactment and this Court has no authority by promulgation of a rule to supersede it. That is to say, this Court has no authority in law to authorize a trial judge to direct the Florida State Hospital and its administrator to retain under custodial care and treatment a person in the status of Petitioner Powell, who was found not guilty by a jury because of insanity and was duly placed in custody for treatment in Florida State Hospital, and has now been determined by the Hospital administrator pursuant to authority of the Baker Act no longer insane and subject to discharge. If the Legislature decides this power should be given circuit judges, it may attempt to do it subject, of course, to constitutional limitations. This Court cannot do it by rule in the absence of due modification of the Baker Act.
NOTES
[1] The amendment did not actually constitute a change in procedure provided for by the rule but rather constituted a clarification.
[2] Again, we note that Section 919.11, Florida Statutes, which was interpreted and applied in Oksten, supra, and Eaton, supra, which cases are factually identical to the instant cause is substantially identical to Rule 3.460 in effect at the time of petitioner's adjudication and commitment.
[3] We are not unmindful of the decisions of the Supreme Court in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), and Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), with which the instant decision is clearly consistent. Those decisions deal with the right to a hearing before commitment to a mental hospital.
[4] By Chapter 70-339, "An Act relating to criminal procedure," the Legislature repealed several statutory provisions relating to criminal procedure which had been superseded by the Florida Criminal Rules of Procedure, including Section 917.01, F.S.